EQUITABLE TRUST CO. v. SIMPSON.

1. Contracts—Interpretation—Ambiguities.
   Interpretation that gives effect to every provision contained in a contract should be adopted where only the contractual rights of the principals are involved and there is no ambiguity in the instrument.

2. Mortgages—Trust Mortgage Extension Agreement—Default—Interest—Interpretation.
   Trust mortgage extension agreement providing that there should be no default until after the unpaid cumulative interest on certain outstanding bonds shall have amounted to three per cent. of the principal amount of such bonds then outstanding requires interpretation that default shall exist if such interest amounts to more than three per cent. of the principal and that such interest be paid by holders of mortgagor interest even though the income from the property be insufficient.

3. Same—Trust Mortgages—Assignment of Rents and Profits—Appointment of Receiver.
   Trustee under trust mortgage on apartment house held, entitled to appointment of receiver to collect rents and profits under

valid provision for assignment thereof in case of default in both trust mortgage and extension agreement where indebtedness against the property is approximately $300,000 and the appraised value is $166,350 as defendant holders of the mortgagor interest have no equity to protect, hence appointment of receiver by the trial court was not an abuse of discretion (3 Comp. Laws 1929, § 13498).

4. SAME—DECLARATION OF DEFAULT UNDER TRUST MORTGAGE AND EXTENSION AGREEMENT.

Default under terms of trust mortgage and agreement extending it, which default entitled trustee to appointment of receiver to collect rents and profits, *held*, properly declared, where record sustains finding of court that default had been properly declared and based its order, unappealed from, to holder of mortgagor interest to make certain payments, in default of which receiver *pendente lite* was to be appointed (3 Comp. Laws 1929, § 13498).

Appeal from Wayne; Miller (Guy A.), J. Submitted October 4, 1938. (Docket No. 93, Calendar No. 40,242.) Decided November 10, 1938. Rehearing denied December 22, 1938.

Bill by Equitable Trust Company, a Michigan corporation, trustee, against Robert Simpson and wife to foreclose a trust mortgage, appoint a receiver, secure an accounting and for other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*Sempliner, Dewey, Stanton & Honigman (Jason L. Honigman* and *A. E. Smith,* of counsel), for plaintiff.

*Atkinson, Donnelly & Lyon,* for defendants.

SHARPE, J. In September, 1928, Charles N. Dailey and wife, being the owners of the Lincoln Manor Apartments in Detroit, Michigan, executed a trust mortgage to the Guaranty Trust Company of Detroit, as trustee, to secure an obligation of $250,000 evidenced by senior bonds in the amount of $210,000 and junior bonds in the amount of $40,000. In

December, 1931, plaintiff corporation was substituted as successor trustee under the mortgage. Shortly thereafter, by reason of defaults occurring in the terms of the trust mortgage, plaintiff filed its bill of complaint for the foreclosure of the mortgage.

During the pendency of the foreclosure proceedings, negotiations were conducted by Robert Simpson, one of the defendants herein who had in the meantime purchased the title to the property subject to the trust mortgage, for the reorganization of the bond issue. As a result of these negotiations an extension agreement was entered into on or about May 21, 1934. By the terms of the extension agreement past due interest was cancelled, future interest was reduced, time of payment on principal was extended until 1943, and defendant Simpson assumed all liability for principal and interest on the trust mortgage. The agreement also provided that Simpson turn over to the trustee the net income from the property, with monthly accountings to be furnished the trustee. Said agreement also provided for an assignment of rents and profits as additional security in the event of default by the mortgagor. Upon the execution of this agreement, possession and management of said premises were turned over to Simpson.

Claiming default, plaintiff in April, 1938, commenced a suit to foreclose the mortgage. Upon the filing of the bill of complaint, an order to show cause why a receiver should not be appointed over said premises was issued. After a hearing and on May 5, 1938, the trial court entered an order finding defendants in default for nonpayment of interest since January 1, 1936; and that the trust company had properly exercised its right to declare the trust

mortgage and extension agreement to be in default. The order also provided that defendant make certain payments and upon his refusal to do so, a receiver be appointed *pendente lite,* leaving the person of the receiver and the amount of his bond to be determined at a later date. Defendants failed to meet the requirements of the above order within the time specified; and on August 9, 1938, the plaintiff trust company was appointed receiver in pursuance of the order of May 5, 1938.

Defendants appeal and contend:

1. That there has been no default in the payment of interest on the A bonds for 1936–1937 as alleged in the bill of complaint;

2. That if there has been a default, it has not been properly declared as provided for in the trust agreement;

3. And that the nonpayment of the 1936–1937 interest, if due, is not a good and sufficient reason for the appointment of a receiver divesting the owners of possession of their property.

The plaintiff contends that it is entitled to the appointment of a receiver as a matter of law and of equity; and that the failure of defendants to appeal from the order of May 5, 1938, is *res judicata* of the present appeal.

The legality of the trust mortgage and extension agreement is not in dispute. Each contains an enforceable assignment of rents and profits within the scope of 3 Comp. Laws 1929, § 13498 (Stat. Ann. § 26.1131). See *Union Guardian Trust Co.* v. *McBride,* 281 Mich. 680.

The major question is, whether or not a default has occurred under the terms of the trust mortgage and extension agreement relative to the payment of interest. Under the trust mortgage there is no dis-

pute that the mortgage is in default by reason of the nonpayment of interest and principal, but defendants contend that under the extension agreement their obligation to pay interest depends upon whether or not funds are available for that purpose.

The relevant provisions of the extension agreement are as follows:

"3. Said owner does hereby covenant and agree that he has assumed and does hereby assume and agree to pay all of the indebtedness secured by said mortgage; that he shall well and truly pay or cause to be paid all of the above described senior series bonds in the aggregate principal amount of $207,-380.90, and all of said junior series bonds in the aggregate principal amount of $40,000, on or before December 31, 1943, at the times and in the manner herein provided. These presents shall be construed to constitute the absolute and unconditional guarantee by said owner of the payment of all of said senior and junior series bonds and all interest thereon and all charges at any time secured by said mortgage, as hereby amended, anything in said mortgage or in any of said bonds to the contrary notwithstanding.

"4. Said owner does hereby covenant and agree that he shall and will well and truly pay or cause to be paid interest on all of said senior series bonds from time to time outstanding under and secured by said mortgage as hereby amended, as funds for the same are available in accordance herewith at the rate of three per cent. per annum, from January 1, 1934, to and including December 31, 1936, payable semi-annually, and at the rate of four per cent. per annum, from January 1, 1937, to and including December 31, 1943, payable semi-annually, and at the rate of seven per cent. per annum after maturity thereof or while in default hereunder, anything in said bonds or mortgage to the contrary notwithstanding. * * *

"14. Said mortgage, as hereby amended, shall not, anything herein or in any of said bonds or in said mortgage to the contrary notwithstanding, be construed to be in default for nonpayment of interest until after all trustee's charges and fees and other reorganization fees and expenses above referred to and until after all now past due taxes and insurance premiums against the mortgaged property shall have been paid in full and until after unpaid cumulative interest on said senior series bonds hereunder shall have amounted to more than three per cent. of the principal amount of said senior series bonds then outstanding hereunder; provided, however, that default shall not be declared by reason of any unpaid interest accruing during the years 1934 and 1935 unless such interest shall not have been paid by December 31, 1939."

In interpreting the above provisions of the extension agreement we have in mind that all of the above provisions should be given some meaning if at all possible.

In *Gibson* v. *Agricultural Life Ins. Co. of America,* 282 Mich. 282, we said:

"Where only the contractual rights of the principals are involved and there is no ambiguity in the instrument, that interpretation should be given that gives effect to every provision contained in the contract."

If section 14 of the extension agreement be interpreted as appellants contend, the result would be that this section would serve no purpose, but given its proper place in the agreement it provides that there shall be no default "until after unpaid cumulative interest on said senior series bonds hereunder shall have amounted to more than three per cent. of the principal amount of said senior series bonds then outstanding." We can arrive at no

other conclusion than that there is a default when cumulative interest on the senior bonds of more than three per cent. of the principal amount of the outstanding senior bonds is due and unpaid. If section 14 is to be given any effect, it means that defendants are bound to pay interest when due for the years 1936 and 1937 even though the income from the property itself is not sufficient to meet it.

It is next urged by defendants that if there is a default in the payment of interest, a receiver should not be appointed. The facts are that defendants acquired the property after default under the original trust mortgage; that the indebtedness against the property for principal and interest is approximately $300,000; and that the appraised value of the property is $166,350. Under these circumstances defendants have no equity in the property; and under the facts as stated in this opinion, the trustee is entitled to the appointment of a receiver. *Union Guardian Trust Co.* v. *Zack,* 274 Mich. 108; *Union Guardian Trust Co.* v. *McBride, supra.* There was no abuse of discretion upon the part of the trial judge in making such appointment.

We have also considered defendants' claim that default has not been properly declared. In the order of May 5, 1938, it is stated that the Equitable Trust Company, as trustee, has properly exercised its right to declare the trust mortgage and extension agreement to be in default. The record sustains this finding.

The decree of the chancery court is affirmed. Plaintiff may recover costs.

Wiest, C. J., and Bushnell, Potter, Chandler, North, and McAllister, JJ., concurred. Butzel, J., did not sit.